# Forbes Street.

1. By Act of June 16th 1836, commissioners were to set off and survey a tract adjoining Pittsburg, as a " City District," make a plan of it, locate and mark streets, &c., and return the plan to the Quarter Sessions, which being approved, the streets to be public highways.   The streets, &c., Forbes street being one, were located, the plan returned and approved.   By Acts of March 15th 1847, and April 5th 1849, when any street was to be opened, viewers were to assess damages and apportion them on lots benefited; but if there should be none such, the court might vacate such street or any part.   Forbes street was ordered to be opened, but was afterwards vacated under Acts of 1847 and 1849.   The Act of January 6th 1864, authorized streets, &c., to be opened and damages assessed to owners and on property benefited.   Forbes street was opened.   *Held,* that damages could not be assessed for improvements made on the location of the streets after the approval of the plan.

2. The Act of 1864 authorizes owners to appeal from the viewers to the councils, and from them to the Quarter Sessions, who should have power to hear evidence, modify, approve or quash the report.   *Held,* that the Sessions might appoint an examiner to take testimony, but could not appoint a master to report his opinion as to a modification of the report, &c.

3. The act did not contemplate that one person should assess damages.

4. Filing the plan under the Act of 1836 was notice to owners of property.

5. After the plan, Aiken sold a lot, describing it as bounded on Forbes street.   This was not a dedication by him of his land covered by Forbes street.

6. The Act of 1864 does not provide for damages for opening streets laid out and appropriated previously to the plan.

7. Pittsburg City District, 2 W. & S. 320, conclusive.

November 7th 1871.   Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

[Forbes Street.]

Certiorari to the Court of Quarter Sessions of *Allegheny county*: No. 43, to October and November Term 1871. In the matter of opening Forbes street in the City of Pittsburg, and the assessment of damages therefor.

On the 16th of June 1836, an Act of Assembly (Pamph. L. 750) was passed directing that a tract of land adjoining the eastern side of the city of Pittsburg should be set off, defined by limits and surveyed (as in the act specified), as a city district of that city. The Court of Quarter Sessions of Allegheny county was to appoint three commissioners to survey and set off the district, and to subdivide it into sections, to lay out a general plan of the district and survey, locate and mark on it such streets, alleys and squares as they should think proper, giving them such arrangements and dimensions as should in their judgment best meet the wants and convenience of any future population. When the commissioners should have made a map of the district, with the streets, lanes, alleys, &c., they were to file it with the Clerk of the Court of Quarter Sessions, who was to give public notice of the filing, so that any one injured might object. The court was to hear and determine any objections and make any alteration that might be deemed proper, and direct the plan with such alterations as might have been made to be recorded, and thereafter the plan should be taken and allowed as a general plan for the district for the purposes contained in the act, and the streets, lanes and alleys so approved were to be deemed, adjudged and taken as public highways.

On the 22d of March 1837, commissioners were appointed; they filed their report July 17th 1840; objections were filed to it; on the 19th of July 1841, the Court of Quarter Sessions decided that the Act of 1836 was unconstitutional, and made a decree refusing to direct the plan to be established or recorded. This decree was reversed by the Supreme Court, and the act declared valid (Pittsburg City District, 2 W. & S. 320); the record was remitted to the Quarter Sessions for further proceedings, and on the 19th of October 1843, that court finally approved and confirmed the plan, with certain alterations. This *adoption and approval* was endorsed on the plan, but does not otherwise appear on the records of the Quarter Sessions. Forbes street was one of the streets laid out in the plan.

On the 1st of March 1845, an act was passed (Pamph. L. 88) authorizing the councils of Pittsburg to admit any sections on the plan into the city, as an additional ward, when it should appear by an election that a majority of the freeholders and taxpayers should be in favor of such admission. In accordance with an election held in pursuance of this act, sections 39, 40 and 41 were admitted into the city as the 8th Ward by ordinance of councils passed December 4th 1846. This ward contained the

[Forbes Street.]

part of Forbes street specially considered in this case.  By another ordinance of councils, the streets, lanes and alleys in the 8th and 9th Wards of Pittsburg contained in the plan "of the city district as the same was determined, established and directed to be recorded" in the Quarter Sessions under the provisions of the Act of 1836 were "declared to be opened as a part of said general plan for the uses and subject to the regulations and exercise of powers declared by said law."

A supplement to the Act of 1836, passed March 15th 1847 (Pamph. L. 376), directed the viewers appointed under that act, in opening any street in the plan of the city district, to take into consideration the advantages accruing to the petitioners for damages, and to ascertain, as far as possible, all owners who might receive any benefit to their property adjacent to such street, and apportion the amount upon such owners fairly and equitably; and if in any case they should find that the amount of damage could not be equitably assessed on adjacent property, they might direct that an amount not exceeding one-fourth of the whole sum be paid by Allegheny county, subject to the approval of the court.  By another supplement passed April 5th 1849 (Pamph. L. 342), it was enacted that if the viewers should report that they could not find property on which they could equitably assess the damages, or three-fourths of the same, the court might vacate the street or any part of it, and the viewers might assess all property that might be benefited, whether adjoining the street or not.

By an act passed March 30th 1855 (Pamph. L. 152), three commissioners were appointed to relocate certain streets in the city district, so as to conform to the shape of the ground and public convenience, and return a plan of their location to the Quarter Sessions, which should be taken as part of the original plan of the district unless excepted to after notice.  Upon exceptions the plan might be altered or approved by the court and either party might remove the proceedings to the Supreme Court whose action should be final.

On the 21st of January 1860, John Aiken presented a petition to the Quarter Sessions, representing that Forbes street had been laid out on the "City District Plan," 60 feet wide, extending wholly on his land, 206 feet east from Marion street, and taking "in its course a two-story brick dwelling-house;" that the streets on the plan had been declared open by ordinance of councils of February 2d 1847; that on the 8th of May 1847, on his application the court appointed viewers to assess his damages; that the viewers assessed his damages at $2500 and reported that there was no property adjacent benefited thereby on which the damages or three-fourths could be assessed; and prayed that Forbes street, so far as it passed over his land, should be vacated.

[Forbes Street.]

On the 7th of March 1860, the court decreed the vacation of Forbes street where it passed over Aiken's land, as set out in his petition.

Another act relating to the streets, &c., of Pittsburg, was passed January 6th 1864 (Pamph. L. 1131). Section 1 authorized the councils to lay out and open new streets, &c., to widen, straighten and extend those already laid out or opened, and to collect the value of property taken or damages done to property thereby, by assessment on property benefited by the improvement; before any street, &c., should be opened for public use the damages to be first ascertained and paid.

Section 2 directed that when the councils desired to lay out, open, widen, &c., any street, &c., they should, by ordinance, fix the location, breadth and length of the same, and appoint three viewers to view the premises, appraise the damages and make the assessments.

Section 3 directd that after notice the viewers should hear the allegations and evidence of the parties claiming damages, and having ascertained the whole amount of damages, they should assess the same on the properties to be benefited by the improvement, make a plot of the proposed improvement showing the location, size, &c., of each property damaged or benefited, with a statement of the amount of damages allowed and the assessment in each case. After notice and opportunity to each owner to see the plot and statement, the viewers should hear and consider all complaints and evidence and make any modifications, if necessary, and make report to the councils, accompanied by their plot, stating the aggregate amount of damages, allowance to each claimant, describing property assessed, &c.

Section 4 required the councils to hear appeals or further complaints against the report of the viewers, with power to send the report back for further action, or quash the proceedings; but when finally approved by the councils the approval should be conclusive, with the proviso that within ten days after such approval any person interested, and believing injustice had been done him, might petition the Quarter Sessions, setting out the facts, and upon notice of such petition, the clerks of councils should certify to the court all the papers and proceedings in the case, court might hear evidence, modify, correct and approve the report, quash the proceedings or appoint new viewers.

On the 25th of May 1868, the councils ordained "that Forbes street from Boyd street to Seneca street be opened in accordance with the 'City District Plan,'" and they appointed viewers " to award damages and assess the benefits arising therefrom." The viewers reported to the councils that persons named were entitled to compensation for damages for the sums respectively mentioned in their report. Amongst the rest were

[Forbes Street.]

| Mrs. Seitz, one two-story brick house . . . . | $ 2,200.00 |
| 56 ft. by 230 ft. on Stevenson street, $90 per ft. . . | 5,040.00 |
| | $ 7,240.00 |
| Samuel Kier & Son, lot 65½ ft. by 230 ft., at $90 . . | $ 5,895.00 |
| Buildings . . . . . . . . . . . . . . | 10,800.00 |
| Removing machinery . . . . . . . . . . | 2,500.00 |
| | $19,195.00 |
| John Aiken, one old brick house . . . . . . | $ 900.00 |
| Lot 48 by 103 ft., at $50 . . - . . . . . . | 2,400.00 |
| | $ 3,300.00 |
| James McGinnis, 12 by 103 ft. . . . . . . | $ 600.00 |
| 3 by 103 ft., east side Marion, at $50 . . . . | 150.00 |
| | $ 750.00 |

The whole amount of damages assessed was $44,785.

After exceptions to the report, the councils finally confirmed it and Seitz, Kier, Aiken and McGinnis petitioned the Court of Quarter Sessions to direct the clerks of the councils to certify the papers and proceedings to the court, and that the court would thereupon take such action as they might think right, &c.

The court made the order prayed for, and on the 6th of November 1869, on motion of J. F. Slagle, Esq., solicitor "for the city of Pittsburg, Thomas MacConnell, Esq., is appointed commissioner to take the testimony offered by the parties interested in the above case in relation to the matters at issue therein and report the same to this court, with his opinion thereon as to such modification of the report of the viewers as should be made, if any, and the form of an order to be made by the court, notice of the time of hearing to be given," &c.

The commissioner heard a very large amount of testimony, which he returned with his report. In addition to matters hereinbefore stated, he reported, as to Aiken's case, that he had owned a large piece of ground, and in August 1858 conveyed a lot out of it to John A. Kercher, part of the description of the lot being "southwardly 120 feet to Forbes street, thence along Forbes street 41 feet 2 inches," &c., and that this lot sold Kercher abutted on the land for which Aiken was claiming damages. The commissioner was of opinion that Aiken, in his deed to Kercher, having recognised Forbes street as one of the boundaries of lot, thereby dedicated his interest in Forbes street to the public, and was estopped from claiming damages for its opening. He was further of opinion, that if the vacation of Forbes street in 1860

20 P. F. Smith—9

[Forbes Street.]

had the effect of revesting the title, it passed to Aiken's grantee, and not to Aiken. He therefore reported that he was not entitled to any damages. But in order that the court might be able to make a final decree on his report, in case he should be mistaken in this opinion, he assessed to Aiken damages to the amount of $4500, of which $500 were for this building. As to McGinnis's claim, he reported that he had made conveyances of lots, recognising Forbes street as their boundary, and he was therefore entitled to no damages; but for the same reason as in Aiken's case, assessed his damages at $1050. As to the Seitz claim, he reported that the house which was included in the assessment of damages had been built before the "City District Plan" had been made. He assessed the damages in this case at $10,090. As to the Kier claim, he reported that his land occupied by Forbes street had on it a large amount of improvements, consisting of valuable buildings and machinery, put on after the approval of the "City District Plan." He reported as his opinion that "the date of the passage of the ordinance to open the street is the time when it was made certain that it would be opened; that until then the ground remained the property of the owner for all purposes," and that Kier was entitled to be paid for his improvements.

In this case he made an alternative assessment as follows:—

"On the basis of Mr. Kier being entitled to damages for the ground and buildings as they stood at the time the ordinance for the opening of Forbes street was passed, I assessed his damages as follows:—

| | |
|---|---|
| Lot sixty-five and one-half feet by two hundred and thirty feet | $9,170.00 |
| Pottery, &c. | 30,000.00 |
| In all | $39,170.00 |

"If he is only entitled to damages for the ground and the buildings which were on the ground at the date of his purchase, I assess his damages as follows:—

| | |
|---|---|
| Lot sixty-five and one-half feet by two hundred and thirty feet | $9,170.00 |
| Buildings | 6,500.00 |
| In all | $15,670.00 |

"In case this last assessment is established, I think Mr. Kier ought not to be charged for any benefits, because I think the injury which the opening of the street will do to the buildings on the remaining ground will overbalance any benefit that the opening will be to the ground itself.

"I have made three different assessments of benefits, and report them in three different separate columns." * * *

[Forbes Street.]

The first of these assessments included damages to Aiken, McGinnis, Seitz, Kier, damages reported by the viewers and not appealed from, and the costs of the proceeding. The total amount was $70.886.

The second assessment omitted Aiken and McGinnis, and amounted to $65.336.

The third assessment omitted Aiken, McGinnis and damages for Kier's improvements. The total amount was $41,836.

In assessing benefits he increased the amounts reported by the viewers proportionably with the increase of the amount of damages ascertained by him, and accompanied his report with three schedules, showing the amounts assessed respectively on a very large number of persons, amongst whom was William C. Miller. His several assessments were $2347.01, $2205.28, $1420.86.

The second schedule assessing benefits was on the basis of the exclusion of damages to Aiken and McGinnis. Kier, Aiken, McGinnis, Seitz and Jane Magee filed exceptions with the commissioner to his report. He overruled all the exceptions, and returned his report as prepared, and the exceptions to the court.

The City of Pittsburg, William C. Miller, Jane Magee, Kier, McGinnis, Aiken and Seitz filed exceptions in court to the report.

After hearing the exceptions the court delivered the following opinion :—

"The commissioner appointed in this case has furnished us with a very full and satisfactory report, in which he has presented, with great ability and clearness, the several questions raised by the testimony.

"After a careful examination of the report and accompanying testimony, aided by the research and arguments of counsel, we have reached the same conclusion as did the commissioner.

"In doing so, however, we do not find it necessary to decide that the act providing for the location and survey of the 'city district' is unconstitutional. As to that, we express no opinion. Under the testimony a large margin is afforded in estimating damages, particularly in the case of Samuel M. Kier; but we are of the opinion that the finding in that case of the commissioner is fully sustained by the weight of the evidence. In addition to the damages awarded by the commissioner to Mr. Kier, he claims a large sum of damages, resulting from the interruption of his pottery business.

"The Act of Assembly under which this proceeding is held, provides that a true and conscionable appraisement of the damages shall be made, taking into consideration in said appraisement the probable advantages and benefits, as well as disadvantages, which any owner or owners will be likely to sustain by reason of the proposed improvement. Speculative damages are not contemplated by the act. And we are of opinion that the finding of the

commissioner embraced everything that is not of that character, and nothing more. The claim of Mr. Kier for damages, in addition to those found by the commissioner, is therefore disallowed. After the commissioner's report was filed, and while exceptions thereto were under consideration by the court, one of the appellants, James McGinnis, to whom the commissioner awarded no damages, claimed the right to discontinue his appeal, and accept the damages awarded him by the viewers appointed by the city councils. We are all of the opinion that he had no such right. If we were to hold that a party can appeal from the award of the viewers appointed by councils, and take his chance of a more favorable award by the commissioner, or by other viewers appointed by court, and then discontinue his appeal as soon as he discovers the second award is less favorable to him than the first, it would encourage litigation, and lead to great uncertainty and confusion in adjusting claims for damages arising from the opening of streets.

" We hold, therefore, that when a party appeals from the action of councils, and pursues his appeal in court until his claim has been passed upon by a commissioner, or by other viewers appointed by court, he cannot discontinue his appeal at pleasure. Our practice in civil cases forbids the discontinuance of a cause, or the taking of a nonsuit, after the verdict of a jury has been announced. We think a similar rule should be applied in cases like the present.

" The form of decree recommended by the commissioner is approved, and decree made accordingly."

The decree, January 31st 1871, was—

" 1. John Aiken, one of the appellants, has not sustained and will not sustain any damages by the reason of the opening of Forbes street, which he is entitled to have paid him, and therefore his claim for damages is hereby dismissed, and the report of viewers is hereby modified accordingly.

" 2. That James McGinnis, one of the appellants, has not sustained and will not sustain any damages by reason of the opening of Forbes street, which he is entitled to have paid to him, and therefore his claim for damages is hereby dismissed, and the report of the viewers is hereby modified accordingly.

" 3. That Louisa Seitz, Daniel Seitz aud George Seitz, joint appellants, have sustained or will sustain damages jointly, by reason of the opening of Forbes street, to the amount of $10,090.

" 4. That Samuel M. Kier, one of the appellants, has sustained or will sustain damages to the amount of $39,170.

" 5. That the costs of this proceeding, $1776, be paid out of the benefits assessed in this case.

" 6. That the assessment of benefits made and reported by the commissioner, contained in the second column attached to his

[Forbes Street.]

report, amounting to $65,336, be adopted and confirmed as the true and proper assessment of benefits in this case, and the report of the viewers is hereby modified accordingly.

"7. That the report of the viewers, so far as the same is not altered, modified or changed by the foregoing parts of this decree, is confirmed."

Aiken and William C. Miller removed the proceedings to the Supreme Court by certiorari, and assigned the decree of the Court of Quarter Sessions, for error.

For certiorari : *Miller & Winston*, for Aiken.

*C. Magee, D. D. Bruce* and *W. D. Moore*, for Miller.

Contrà : *S. Schoyer Jr.*, and *G. Shiras, Jr.*, for Kier.

*S. H. Geyer*, for Seitz.

*J. F. Slagle*, for City of Pittsburg.

The opinion of the court was delivered, May 13th 1872, by

READ, J.—By an Act passed the 16th June 1836 (Pamph. L. 750), a tract of land adjoining to and bounded in part by the eastern bounds of the city of Pittsburg, was directed to be set off, defined by limits and surveyed, in the manner and for the purposes therein specified, as a city district, for the said city commissioners appointed under said act, were to make a subdivision of the same into sections, and to make and lay out a general plan of the said district, to survey, locate and mark therein, such streets, alleys and squares as they shall think proper, and shall cause to be made a correct map or plan of the same, and return it to the Court of Quarter Sessions of Allegheny county, and when established, the streets, lanes and alleys so approved, shall for ever thereafter be deemed, adjudged and taken as public highways.

By an act passed the 1st of March 1837, the borough of the Northern Liberties of Pittsburg, was added to and incorporated with the city of Pittsburg, and the boundary lines of the city district of the city of Pittsburg were extended, and the provisions of the preceding act were extended to and made part of the act, and commissioners were required to be appointed, with all the powers conferred upon the commissioners designated in the Act of 1836. Commissioners appointed under these acts performed all the duties imposed upon them by their provisions, and made a report to the Court of Quarter Sessions, consisting of a map or plan of said city district, which was duly filed and presented to the court, who, after hearing the parties, adjudged said act to be

unconstitutional, and refused to adjudge and determine that the said plan should be established, and refused to order the same to be recorded. The record of this proceeding was removed by certiorari to the Supreme Court, who decided the acts to be constitutional, and reversed the decision of the court below, and ordered the record remanded to the court below, in order that it may proceed in the matter as required by the Act of Assembly, and the record was remitted for further proceedings. The plan was finally approved and confirmed by the Court of Quarter Sessions, with certain alterations and modifications, on the 19th October 1843. The case, under the title of " In the matter of the district of the City of Pittsburg" is reported in 2 Watts & Serg. 320, and the very able opinion of Judge Kennedy gives a full statement of the provisions of the Act of Assembly and the proceedings under it.

By an Act of the 1st March 1845 (Pamph. L. 88), provision is made for an election by the freeholders and tax-payers of sections applying to be admitted into the city on the question of admission, and if the majority of votes shall be for admission, the select and common councils of the city of Pittsburg are authorized to admit the same as an additional ward of said city. Under this provision, by an ordinance of the 10th December 1846, sections 39, 40 and 41 were admitted as a ward of said city, designated as the Eighth Ward, and section No. 25 was also admitted as a part of the Seventh Ward of said city.

By a supplement to the Act of the 16th June 1836, passed 15th March 1847 (Pamph. L. 376), the viewers appointed under said act, in the opening of any street in the plan of the city district aforesaid, are to take into consideration the advantages that may accrue to any person petitioning for damages, and to ascertain as far as possible the names of all owners who may receive any benefit or increase of value to their property adjacent to said street, and apportion the amount thereof upon each of the said owners fairly and equitably, and in case the said viewers shall in any instance believe that the amount of said damages cannot equitably be assessed upon the adjacent property and so certify, then they may direct that an amount not exceeding one-fourth of the whole sum shall be paid from the treasury of Allegheny county, the whole proceedings to be subject to the approval of the court, as in other cases of road damages. Provision is made for the damages so apportioned, remaining a lien upon each lot to the extent of the assessment, and charge thereon, and if not paid within one year after confirmation by the court, the lot may be levied upon and sold, and the moneys so assessed and paid into the city treasury shall be paid over to persons entitled thereto.

By the fourth section of an act passed 5th April 1849 (Pamph. L. 342), it was enacted that where the viewers have certified, or

[Forbes Street.]

may certify, and report to the court, that they cannot find property benefited by the opening of any such street, and cannot equitably assess the damages, or three-fourths of the same, as provided by the Act of 15th March 1847, the court is empowered to vacate the street or any part of it, and the viewers shall take into account and assess all property that may be benefited whether adjoining such street or not.

By an act to authorize the re-location of certain streets in the city district of Pittsburg, passed 30th March 1855 (Pamph. L. 152), three commissioners were appointed to re-locate the streets in the city district of Pittsburg, lying south-east of Bates street, and north and east of Frazer and Halket streets, so that they may conform to the shape of the ground, and answer public convenience with due regard to private property ; said commissioners to return a map or plan of the location made by them to the Court of Quarter Sessions of Allegheny county, which shall be deemed and taken to be a part of the original plan of said district, unless after the notice prescribed by the act authorizing said plan, it be excepted to by parties interested in the land occupied by said streets, and if any exceptions be filed, the said plan may be altered or approved by said court, with the right to any party to remove the proceedings to the Supreme Court of the proper district, whose action thereon shall be final.

An act concerning streets and sewers in the city of Pittsburg was passed the 6th January 1864 (Pamph. L. 1131), under which the present proceedings in relation to Forbes street have been conducted.

By two supplements to the acts incorporating the city of Pittsburg, passed the 6th April 1867 (Pamph. L. 846), and the 1st April 1868 (Pamph. L. 565), the city was enlarged by the annexation of the borough of Lawrenceville, and the townships of Pitt, Oakland, Collins, Liberty and Peebles, which were consolidated with the same and together formed the city of Pittsburg, and all laws and ordinances relating to the city of Pittsburg which were in force at the time of the passage of the aforesaid Act of April 6th 1867, and which have not been subsequently repealed or supplied, were declared to be and remain in full force, and applicable to said city as consolidated by said act.

On the 25th May 1868, the city councils passed an ordinance that Forbes street, from Boyd street to Seneca street, be opened in accordance with the city district plan, and appointed viewers in accordance with the Act of Assembly, approved January 6th 1864, to award damages and assess benefits arising therefrom. The viewers, proceeding in the manner prescribed by the act, made their report to councils, which was finally acted upon and approved by them, and within the time fixed by the act several persons interested presented petitions to the Court of Quarter Sessions of Allegheny county, setting forth the facts in their cases,

[Forbes Street.]

and that they verily believe that injustice has been done them by the report of said viewers, and the clerks of councils certified to the said court all the papers and proceedings in the case. The act then says: "and thereupon the said court shall take such action in the premises as they may think right and proper, and shall have power to hear evidence to modify, correct and approve said report, or quash the whole proceedings, or to appoint new viewers with the like power to modify, correct and approve the report or quash their proceedings."

The power thus given is specific. It is to hear evidence for the purpose of acting on the report, or to appoint new viewers—which the court did not do. In hearing the evidence the court had the power to appoint an examiner to take the testimony, but no authority to appoint a master, whose report and opinions occupy thirty-two printed pages, and formed the entire ground-work of the decree of the court. The master exercised his own judgment in fixing the amount of damages done to property, and in the assessments upon properties benefited by the improvement—a grant of authority to a single individual never contemplated by the legislature. The proceedings must, therefore, be reversed; but as there is an evident misapprehension in the mind of the court, as well as that of the master, as to the Act of June 16th 1836, it will be proper to consider its provisions as applicable to the case before us.

We must express great surprise at the statement by the court in their opinion, p. 41, "after a careful examination of the report and accompanying testimony, aided by the research and arguments of counsel, we have reached the same conclusion as did the commissioner. In doing so, however, we do not find it necessary to decide the act providing for the location and survey of the 'city district' is unconstitutional." A singular expression to be used in relation to an act which this court, in 2 W. & S. 320, thirty years before, decided to be constitutional.

This act in directing the laying out of the city district made two classes of streets: 1. Such streets as the commissioners thought proper to survey, locate and make in the general plan of the said city district. 2. Such streets which, previous to the making of the said plan, had been laid out and appropriated by private persons, or otherwise, for public use, or for the use of the owners of lots fronting thereon, which are directed to be adopted, inserted in and made part of the said general plan.

Provision is made for the owner of any ground through which any street of the first class may be opened, obtaining indemnification for any injury he may sustain thereby; but there is no provision made for damages occasioned by the opening of streets of the second class.

The leading object of laying out the city district, which was intended finally to become a part of the city of Pittsburg, was

[Forbes Street.]

that the owners of ground within it should know what portion of their property would be taken for streets and other public purposes. The portions laid out for streets were to be deemed taken and adjudged as public highways. If buildings were erected on ground to be taken for streets of the first class, previously to the plan and survey, then they were to be paid for as well as the ground taken when the streets were opened; but if built after the survey and plan, of which map or plan all the freeholders owning property in the said district had notice under the provisions of the 6th section of the Act of June 16th 1836, then it is clear such buildings were not to be paid for, for otherwise the map or plan would be entirely nugatory. The case of Freeman Street, 17 Wendell 649, cited by Judge Kennedy, 2 W. & S. 325, is good authority upon this point.

The map or plan was approved and confirmed, with certain alterations and modifications, on the 19th October 1843, and, as we have seen, certain sections of it were admitted into the city of Pittsburg as the Eighth Ward, and part of the Seventh Ward. This map or plan has been distinctly recognised by various Acts of Assembly, and forms the basis of very valuable improvements in the city of Pittsburg, and it is too late in the day to take technical objections founded upon the looseness of the docket entries of the court.

When, therefore, an individual erects a pottery, or any other building or improvement, on Forbes street, and the street is ordered to be opened, he cannot claim damages for its removal, nor for any injury caused to the remaining works by such necessary removal or destruction. His damages will be limited to the value of the ground taken for the street, and this is strictly equitable, as it diminishes the amount of benefits to be assessed upon other owners of property.

So the question of dedication in all the authorities in this state really applies only to streets of the second class, and has no application to streets of the first class, which in one of the cases creates the absurdity of dedicating by inference a house, as well as the ground on which it stands, to the public.

In their action upon the opening of Forbes street, the court below must consider as established,

1st. That the Act of 16th June 1836 is constitutional.

2d. That the map or plan filed in the office of the clerk of the Court of Quarter Sessions was fully established according to law.

Decree reversed, and record remitted for further proceeding, according to law.

AGNEW, J.—Without dissenting generally, I cannot concur in that part of the opinion which denies the power to appoint a commissioner to *aid* the court by examination and report. I consider

this appointment as merely *ancillary* and made under the *general* powers of the court, and his report is merely advisory, and not binding like that of a statutory viewer till set aside in due course of procedure.