# Dintaman v. Harrisburg, Appellant.

*Road law—Damages—Opening street—Improvement within lines of unopened street—Improvements made after approval of plans locating street—Act of January 2, 1871, P. L. 1556.*

1. At common law damages cannot be assessed upon the opening of a street on account of improvements made within the lines of a located but unopened street after approval by the municipal authorities of the plans locating the street.

2. The legislature by the Act of January 2, 1871, P. L. 1556, ratified and confirmed all the streets laid out in the City of Harrisburg, surveyed pursuant to the authority conferred by the Act of April 9, 1869, except, inter alia, so much thereof as extended from Front street to low watermark of the Susquehanna river from State to Maclay streets, and provided that before it could be opened between State and Maclay streets of the uniform width of the other portions already laid out to low watermark, a plan was to be executed and recorded within two years after the passage of the Act of 1871. It was also provided that property owners were to receive no compensation for buildings erected on any street of the city after it was designated and laid out by the authorities. The city failed to record a plan showing Front street, between State and Maclay streets, as extending to low watermark. *Held,* that Front street as contemplated was never fully laid out between State and Maclay streets, and that the city lost the benefit of the statute and the rule of the common law relieving it from paying damages for buildings erected within the lines of a located but unopened street, after approval of the plans locating the street.

Argued May 19, 1919. Appeal, No. 1, May T., 1919, by defendant, from judgment of G. P. Dauphin Co., Sept. T., 1917, No. 264, on verdict for plaintiff for damages sustained by the opening of a street in the case of Arlanda P. Dintaman v. City of Harrisburg. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Issue directed to try appeal of plaintiff from an award of viewers by reason of the taking of improvements for the opening of a street. Before MCCARRELL, J.

A special verdict was rendered subject to reserved decision of the court.

The court subsequently entered judgment on the verdict for the plaintiff for $21,000. Defendant appealed.

*Errors assigned* were the conclusions of law and the judgment of the court.

*John E. Fox,* City Solicitor, with him *John R. Geyer,* for appellant, cited: In re District of the City of Pittsburgh, 2 W. & S. 320; Forbes Street, 70 Pa. 125; Shaaber v. Reading City, 150 Pa. 402; Bush v. McKeesport City, 166 Pa. 57; Harrison's Est., 250 Pa. 129.

*George R. Barnett,* with him *B. Frank Nead* and *James G. Hatz,* for appellee.

OPINION BY MR. JUSTICE KEPHART, June 21, 1919:

The principal question involved in this appeal is the amount of compensation to be paid the appellee for the opening of Front street in the City of Harrisburg. To an intelligent understanding of the case, it will be necessary to review some of the early history of the city. Hardscrabble was a small village built on both sides of a turnpike, which was laid out and opened in 1787, along the Susquehanna river. Houses were built there as early as 1727. The Borough of Harrisburg was incorporated in 1791; when first laid out, by the executors of John Harris, the turnpike, to which reference has been made, became Front street in the borough; and the land between it and the river afforded a desirable place for a park site and city improvement. Hardscrabble continued to exist, independent of the borough, until the year 1860, when, by an act passed, it was included within the territorial limits of the city. By section 33 of this act, commissioners were appointed to survey and locate streets, avenues and alleys upon the land within the city limits. This accomplished and the plan filed, as directed by the

act, exceptions were taken thereto in the court of quarter sessions. The legislature then stepped in, and, by the Act of 1863, ratified and confirmed all the streets, lanes and alleys in the city, surveyed pursuant to the authority conferred by the Act of 1860, except, inter alia, so much thereof as extended Front street to low watermark between State and Calder streets. This action definitely fixed the location of all the streets, except those specifically mentioned as not being within the confirmation act. The land now in question was within the exception. Later, by Act of April 9, 1869, P. L. 771, a new board of commissioners was appointed. It was required, by the act, to survey all the territory that had not theretofore been laid out and approved as a part of the city plot, which included appellee's land. This done, the commission duly reported to the legislature and the Act of January 2, 1871, P. L. 1556, validating the streets as laid out, was then passed. By the Act of 1860, freeholders were to receive no compensation for houses or other buildings built on any street, lane, or alley of the city after it was designated and laid out by the commissioners, or a majority of them. This proviso was reënacted in Section 1 of the Act of 1871.

The appellee's property, located between State and Maclay streets was subject to all the effective provisions of the Act of 1871. The property lies between the river and what was the old turnpike, or Front street, and since 1871 the city made no effort, at this place, to widen Front street to low water mark of the Susquehanna river; the persons owning properties along the river, between these streets, had, with apparent security, built houses and otherwise enjoyed their premises as freeholders, notwithstanding the Act of 1871. The city did not endeavor to stop these improvements, nor warn the owners of the risks, if any, they were incurring. By ordinance of 1914, Front street was opened to its full width, thereby affecting the property of the appellee, and some forty houses, with boat houses and other buildings

along the river owned by other persons. Many of these buildings were erected, under city permits, since the Act of 1871. A special verdict was taken, finding the value of appellee's land and improvements prior to January 2, 1871, to be $14,500, and that, since the date of the act, other improvements had been made of the value of $6,500. Judgment was entered for the full amount, and the last item is now in dispute.

It is the city's contention that under the proviso of the Act of 1860, reënacted by the Act of 1871, the owners of these several properties should not be compensated for buildings erected since the Act of 1871. Conceding the act to be in full force, and reading into it the common law as it relates to buildings erected on plotted streets, its contention would be sound, undoubtedly, if it were not for the language of the several sections of the Act of 1871. These take out of the operation of this proviso, and of the common law, the properties located between Maclay and State streets. The rule of the common law, as expressed in Bush v. McKeesport, 166 Pa. 57, is, that damages cannot be assessed for improvements made within the lines of a located but unopened street after the approval of the plans of which the street in question is a part. See Harrison's Est., 250 Pa. 129, 133, and Philadelphia Parkway, 250 Pa. 257, 261.

When the legislature, in 1871, approved the report of the commissioners, the location of Front street, at the point in question, was fixed, not by the commissioners, but by the terms of the act itself, and, from it, it is apparent something was to be done with this street different from the other streets on the plan, and Front street, between State and Maclay streets, was not to be treated in the same manner as the other streets. By section 2, either the city or the owners of lots of not less than 200-foot front on streets other than Front street, could move to open the street and have damages assessed without further plans to perfect it. Section 3 deals with Front street alone. Before it could be opened, from State to

Maclay streets, of the uniform width of the other portions already laid out (that is, to low watermark), a plan was to be executed and recorded within two years after the passage of the act; thereafter, from time to time, it was to be opened as the city authorities deemed necessary, and thereupon they were to take and enter upon the properties found within the bounds of the plot; after the plot or plan was recorded, all buildings thereafter erected were to conform to the recorded limits; and all lands, buildings then erected, and rights existing, between the recorded line and the river were to be taken for the said street and damages estimated according to the advantages or disadvantages to each of the several properties by the opening of any portion of the street. This, in substance, is the language of section 3.

If section 1 embodied a complete plan of Front street (exclusive of the grade) why was it necessary to execute and record, within two years, a plan "of a uniform width with the portion of [Front street] already laid out and graded from State to Maclay streets"? Section 1 was a sweeping confirmation of the streets laid out on the lands excepted by the Act of 1863, and it formed the base from which section 3 was to operate. This section imposed conditions on the city that were mandatory for no other reason than to secure a perfectly laid out street from the plan approved in section 1, as well as to provide for compensation to the owners of property taken for the street. The city did not meet the requirements of this section; the plan mentioned in section 3, if it was ever made and executed, was never recorded, nor was the plan as approved by the first section. Assuming it was made and executed in conformity to the legislative direction, and of this there is no evidence, the property lines and buildings were to start from and be affected by this "recorded" line. That line, the legislature declared, was to be effective data for the street. The line was to be recorded as a permanent notice to the owners who desired to erect buildings in the future, and

to subsequent purchasers, and it was to be the foundation of the city's acts. Without performance by the city of this express mandate of the legislature, the street, as contemplated, was never fully laid out between State and Maclay streets. By its failure to so perform, completing an otherwise perfectly laid-out street, the city lost the benefit of the proviso in section 1, and the rule of the common law, as such benefit only appertained to streets regularly laid out, either at common law, or this particular act. We do not say that Front street, through the later acts of the city council and by the ordinance of 1914 and by the various recognitions from time to time given that street, is not a lawful street at this time. What we do hold is that, if the city was entitled to any benefit by way of diminution in damages for improved property, it lost that right through its neglect to comply with sections 1 and 3 of the Act of 1871. We do not here consider the purpose of section 5, to give full compensation, as of the time of taking, for all improvements, different from that mentioned in section 1, irrespective of the question just discussed. What we have decided meets the case.

The judgment of the court below is affirmed.