## Tutino v. New Castle.

*Eminent domain—Condemnation of land for municipal purposes—Measure of damages—Owner improving land after commencement of condemnation proceedings—Widening and straightening creeks—Act of April 28, 1899.*

1. The principle that the liability of a municipality for damages to property taken by condemnation is limited to the condition of the property at the time the proceedings in condemnation were instituted, and that the owner cannot, in the meantime, make improvements except at his own hazard, applies to proceedings to straighten and widen a creek under the Act of April 28, 1899, P. L. 74, notwithstanding the fact that the language of that act is in large measure taken from the Act of May 16, 1891, P. L. 75, relating to the opening and widening of streets, and omits the 12th section of the earlier act, which expressly provides that the property owner shall not be entitled thereafter to recover damages for improvements placed within the lines of any located street or alley after the same shall have been located or ordained by councils.

2. Not decided, whether he may protect himself by applying to the court for a writ of mandamus upon the city to proceed with its condemnation or repeal its ordinance, or whether he may give notice of his intention to abandon the land and proceed to have his damages ascertained and paid.

Motion for judgment for plaintiff. C. P. Lawrence Co., Sept. T., 1918, No. 42.

*Charles Mathews, Jr.* (with him *Martin & Martin* and *Cunningham & Graham*), for plaintiff.

*James A. Gardner*, City Solicitor, and *Robert White*, Assistant City Solicitor, for defendant.

PRATHER, P. J., 30th judicial district, specially presiding, July 12, 1921.—This case originated in condemnation proceedings, instituted by a city ordi-

1 D. & C.

nance passed pursuant to the provisions of the Act of April 28, 1899, P. L. 74, for the purpose of straightening and widening Neshannock Creek in the City of New Castle.

The improvement was proceeded with by an actual taking of a certain part of plaintiff's land after the report of viewers filed. From the award of damages plaintiff appealed, and the case was tried before a jury.

Considering plaintiff's property as it existed at the time of the passage of said ordinance, and as affected by the actual taking of his land, the jury assessed plaintiff's damages at $3300. This assessment excluded the item of damage claimed for the loss of a certain building valued at $3000, which plaintiff erected on the condemned property after the passage of said ordinance, and which the city compelled him to remove.

The legal controversy is whether this item of $3000 is an element of damage for which the city is liable.

The special finding of the jury relative thereto, and agreed to by counsel, is: "That the ordinance appropriating and condemning plaintiff's property was duly passed and approved Dec. 17, 1915. That thereafter, about the year 1918, and prior to the actual taking and excavating by the city, and after notice to plaintiff that the city had passed such ordinance, plaintiff constructed on his property, and upon the ground so appropriated, a two-story frame building of the value of $4500, and which he was required to remove by direction of the city. For said building plaintiff received as salvage $1500, leaving the net damage or loss suffered by said removal of $3000."

The regularity of the proceedings under the statute is not questioned. The 2nd section of said act provides for the appointment of viewers by the court upon the presentation of a petition by the municipal authorities. It is, therefore, clear that the property owner cannot be heard in this part of the proceeding.

The viewers are appointed for and sworn to "estimate and determine the costs and expenses and the damages for property taken, injured or destroyed."

The 8th section of the act provides: "In case any borough or city shall repeal any ordinance passed, or discontinue any proceedings taken, providing for any of the changes or alterations provided for in the preceding sections of this act, prior to the entry upon, taking, appropriation or injury to any property or materials, and within thirty days after the filing of the report of the viewers assessing damages and benefits, the said municipality shall not thereafter be liable to pay any damages which have been or might have been assessed, but all costs upon any proceeding had thereon shall be paid by said municipal corporation, together with any actual damage, loss or injury sustained by reason of such proceedings."

The trend of all decisions upon statutes granting the power of condemnation to municipalities is to limit the liability of the municipality for damages to the condition of the property at the time the proceedings in condemnation were instituted. Therefore, while the damages to the owner were to be ascertained at the time of the actual entry and disseizure, he could not, in the meantime, make improvements thereon, except at his own hazard.

Our attention is called to the fact that the Act of 1899, relating to the widening of streams, is in a large measure a copy of the language of the Act of May 16, 1891, P. L. 75, relating to the widening and opening of streets, and that section 12 of the Act of 1891 contains the following provision, omitted from the Act of 1899: "No person shall hereafter be entitled to recover any damages for any buildings or improvements of any kind which

shall, or may be, placed or constructed upon or within the lines of any located street or alley after the same shall have been located or ordained by councils."

It is urged that the omission of this clause from the latter act is significant of the legislative intent that, under the Statute of 1899, the owner of land appropriated by ordinance can, at the financial peril of the municipality, improve it *ad libitum*.

We are not only without authority to support this contention, but the trend of our decisions is decidedly opposed to it.

In the first place, as to streets projected merely upon paper, the decisions are uniform that the municipality incurs no liability to the land owner until they are actually opened, and that the land owner is not entitled to compensation for the destruction of buildings erected on the site of such a street after the proper filing of a plot or survey establishing such streets: District of City of Pittsburgh, 2 W. & S. 320, 326; Forbes Street, 70 Pa. 125, 137.

"When, therefore, an individual erects a pottery or any other improvement on Forbes Street, and the street is ordered to be opened, he cannot claim damages for its removal, nor for any injury caused to the remaining works by such necessary removal or destruction. His damages will be limited to the value of the ground taken for the street:" Forbes Street, 70 Pa. 125, 137.

In the Schuylkill Navigation Co. v. Farr, 4 W. & S. 362, 372, wherein said company under their charter possessed powers of eminent domain, the Supreme Court held that, where the owners of land affected by raising the dam of said company, after notice of an intention to raise said dam, build a furnace within an area affected thereby, "they would be entitled to little, if any, damages" for its destruction. The Supreme Court, on the facts recited, held that: "It would be their own folly to proceed with their work when put upon their guard by a notice that the company intended to improve the navigation in the manner stated. . . . If the knowledge of this fact was brought home to them, they, as prudent persons, would be bound to ascertain the intentions of the company as to the proposed alteration in the height of the dam."

Considering the proviso in section 12 of the Act of 1891, limiting the land owner's damages to existing improvements, and the absence of such a proviso in the Act of 1899, the legal effect of such a proviso is important in considering the significance of its absence.

The Supreme Court has uniformly held this proviso nugatory.

In Bush v. McKeesport, 166 Pa. 57, 59, the Supreme Court, considering the effect of this clause, said: "If the question intended to be raised by appellants were an open one, much might be said on both sides, but we think the underlying principle has been too long and firmly settled in this State, adversely to plaintiff's contention, to justify us in holding that any new principle was introduced, or change in the law effected, by the clause above quoted. That clause is merely declaratory of the common law of the State, as recognized in Forbes Street, 70 Pa. 125, and other cases."

In Harrison's Estate, 250 Pa. 129, the Supreme Court, considering a similar clause in the Act of Dec. 27, 1871, P. L. (1872) 1390, reannounced the same rule, cited with approval Forbes Street, 70 Pa. 125, and Bush v. McKeesport, 166 Pa. 57, and said: "We see no escape from this conclusion, and must regard the question here raised as settled in our jurisdiction:" See, also, Dintaman v. Harrisburg, 265 Pa. 357, 360.

As the proviso in section 12 of the Act of May 16, 1891, P. L. 75, and the similar proviso in the Act of Dec. 27, 1871, P. L. (1872) 1390, are but declara-

1 D. & C.

tory of the common law, their incorporation in the statutes added nothing to the unwritten law. Hence, the absence of such a proviso cannot reflect a legislative intent to revoke a well-established rule of law by saying nothing concerning the subject-matter.

In Shoemaker v. United States, 147 U. S. 282, 321, the Supreme Court said: "It is true that by the institution of proceedings to condemn, the possession and enjoyment by the owner are to some extent interfered with. He can put no permanent improvements on the land, nor sell it, except subject to the condemnation proceedings."

In Pattison v. Buffalo R. & P. Ry. Co., 268 Pa. 555, the Supreme Court, citing the foregoing from the Shoemaker case with approval, said: "Where land is appropriated under the power of eminent domain, the owner's right to any use of the land ceases." See Appeal of Philadelphia, 143 Pa. 414, 423; Volkmar Street, 124 Pa. 320.

Plaintiff not only had constructive but actual notice of the passage of the ordinance declaratory of the city's intention to take his land for the purposes mentioned therein.

With this knowledge, he proceeded to construct a building on the land so appropriated at a cost of $4500. This he was required to remove at a loss of $3000 when the city made actual entry upon his land to straighten said creek.

The allowance of damage for the removal of this building under the admitted facts would be a standing invitation to every property owner opposed to the particular improvement affecting his property to begin his program of erecting costly edifices upon the property proposed to be appropriated in order to render the improvement financially impossible.

If one under such circumstances could with impunity build upon the condemned land, there would be no limit to the damage he might entail upon the municipality by the doctrine invoked.

We are not unmindful that cases of this nature, when the proceedings are unduly delayed or prolonged, are often embarrassing to the land owner. In this particular proceeding the statute seems to have been framed in the interest of the municipality.

We are not called upon to decide whether he might not have protected himself by applying to the court for a writ of mandamus upon the city to proceed with its condemnation or repeal its ordinance; or, as said in the case of Volkmar Street, 124 Pa. 320: "Whether the owner might give notice of his intention to abandon the land (described in the ordinance) and proceed to have his damages ascertained and paid." See Second Avenue Case, 7 Pa. Superior Ct. 55, 61.

We are of the opinion that plaintiff's damages are limited to the effect the taking had upon his land, regardless of, and excluding, the house built thereon after the passage of said ordinance, and, therefore, he cannot recover for the house so built and lost by removal.

Consequently, plaintiff's damages are limited to $3300.

*Order.*

Now, July 12, 1921, upon the special finding and upon the question reserved, judgment is directed to be entered for plaintiff and against defendant city for $3300, as of the date of the verdict, upon payment of the proper jury fee.