# In the matter of the District of the City of Pittsburgh.

A *certiorari* to the Court of Quarter Sessions to remove road cases lies without any special allowance or cause shown, on which the court may affirm the proceedings or remit them for further proceedings. And the same principle applies to a proceeding in that court for laying out streets and squares in a proposed city district.

The mere laying out streets, &c., for a city, under the Act of 16th of June 1836, and its supplement, or under the general road law, is not of itself a taking of the property of individuals by the right of eminent domain recognised in the constitution; and it is only when they are actually opened and applied to public use, that the owners are entitled to receive compensation.

Therefore, the legislature had authority to pass the Act of 16th of June 1836, to lay off a district of country adjoining the city of Pittsburgh, and to direct a survey and location of the streets in anticipation of the future increase of its population.

They could, also, direct such streets, &c., to be opened on the petition of thirty lot-holders.

CERTIORARI to the Quarter Sessions of *Allegheny* county. The facts of this case are fully stated in the opinion of the court.

*Loomis*, for complainant.
*M'Candless* and *Biddle*, contra.

The opinion of the Court was delivered by

KENNEDY, J.—This was a *certiorari* to the Quarter Sessions of *Allegheny* county, to remove the record of a proceeding had therein under an Act of Assembly of the 16th of June 1836, (*Pamph. Laws* 1835-6, *p.* 750), authorizing a tract of land adjoining the city of Pittsburgh to be surveyed and set off as a city district for that said city. Its boundaries, by the 4th section of a Supplementary Act to the Act of 1836, passed the 1st of March 1837, (*Pamph. Laws* 1836-7, *p.* 29, 30), are directed to be laid out as follows: " Beginning at the south-east corner of the said city, in

[District of the City of Pittsburgh.]

the Monongahela river, thence running by the middle of the said river to a point opposite to the mouth of the four-mile run; thence by a straight line to the mouth of said run; thence along the valley of said run to its source, near the Farmers' and Mechanics' road; thence by a straight line to the source of that branch of the two-mile run which heads near to and eastwardly of the brick house of Aikins; thence by the valley of said run, in as straight a line as possible, to the Pittsburgh and Greensburgh turnpike road; thence by the line of the borough of Lawrenceville to the middle of the Allegheny river; and thence by the middle of said river to the north-east corner of the present city line." For the purpose of surveying and setting off this district, of subdividing it into sections of not more than sixty nor less than thirty acres, and of laying out and locating streets, lanes, alleys, and squares therein as they shall think proper, three commissioners are directed, by the first Act, to be appointed by the Court of Quarter Sessions of Allegheny county. These commissioners, after having completed their surveys and determined the limits and location of the sections, streets, alleys, and squares, contained in the general plan which they are required to make, are also directed to cause a correct map or plan to be made of the same, with such description and explanations as may be necessary to a perfect understanding thereof; and having done this, to return the map or plan to the said Court of Quarter Sessions, where it is made the duty of the clerk of the court to file the same in his office for public inspection, and to give notice in at least two newspapers, published in the city of Pittsburgh, that on a certain day appointed by the court for that purpose, the court will hear any objections which shall be made thereto, by any of the freeholders owning property in the said district, who shall consider themselves aggrieved by the adoption of the same; and the court, after hearing the objections, are required to adjudge and determine whether the same shall be fully established, or whether any and what alterations shall be made in the same; and after such determination, shall direct the said map or plan, with such alteration as shall be made, to be recorded, and thenceforth the said map or plan shall be taken and allowed as a general plan for the said district for the purposes in the Act contained, and the streets, lanes, and alleys so approved shall for ever after be deemed, adjudged, and taken as public highways. Power is also given by the Act to the select and common councils of the city, and they are required, on the petition of any number, being not less than thirty of the freehold owners of lots, lying within the limits of any section of the said city district, and adjoining the then limits of the said city, to declare by ordinance the admission of the said section into the said city, and the said section shall for ever thereafter be deemed and taken and allowed to be a part of the said city to all intents and purposes, and subject to the jurisdiction and government of the

II. — 41

municipal authority of the said city, &c.; and the streets, lanes, and alleys contained in the aforesaid general plan, so far as the same shall be within the limits of the section so admitted, shall be opened for the same uses, and subject to the same laws and regulations, and exercise of powers as the other public streets within the said city. But it is provided that the opening of the streets, lanes, and alleys in every section of the said city district, shall not be ordered until the section shall be admitted into the city as part thereof in the manner mentioned above, when the owner or owners of ground through which any street, lane, or alley, not previously laid out by such owner or owners, shall be opened, may proceed in the same manner to obtain indemnification for any injury he or they may sustain thereby, as is directed by the several Acts in force, and providing for the opening of public roads in this commonwealth. The Court of Quarter Sessions of Allegheny county accordingly, in obedience to the Act, appointed three commissioners, who, in discharge of the duties imposed upon them by the Act, with the assistance of a competent surveyor, surveyed and marked out by its limits the said city district; and subdivided the same into sections, according to the boundaries, description, direction, and restrictions contained in said Act; and after making and laying out a general plan of the said district, surveyed, located, and marked therein such streets, lanes, and squares as they thought proper, giving to the same such arrangement and dimensions as should, in their judgment, be best calculated to meet the wants of the public and the conveniences of any future population; and caused to be erected or inserted at suitable points within the said district, landmarks of durable materials, from which the boundary lines of the said district, sections, streets, alleys, and squares contained in the said general plan, may at any time be retraced and determined, securing the same, as far as may be, from injury or displacement, as required by the said Act; a correct map or plan of all which they caused to be made with such description and explanations as are necessary to a perfect understanding of the same, which they returned to the said Court of General Quarter Sessions, where it was received and filed by the clerk of the said court in his office for public inspection, and notice given by him of an order made by the said court, according to the requirement of the Act, assigning a particular day whereon the court would hear objections to the said map or plan, if made by any of the freeholders owning property in the said district. Afterwards, on the day appointed for that purpose, objections were made to the map or plan by some of the owners of property within the city district. The court, after hearing the parties concerned, conceiving the Act of Assembly, under which the proceeding had taken place and the map or plan was made, to be unconstitutional, refused to establish it,

[District of the City of Pittsburgh.]

either in whole or in part, and therefore, as it appears, refused to direct it to be recorded as required by the Act.

On behalf of the defendants here a motion has been made to quash the writ of *certiorari*, because, although it is a writ of course, yet it ought not to have been issued without cause having been first shown, and also, because by it, the record of the proceedings therein have been brought into this court, and being here by virtue thereof, must remain, notwithstanding this court shall decide that the court below erred in their judgment, without any further action being had in the case; for this court has no authority to do what the court below were required by the Act of Assembly to do; nor can this court remit the record so that the court below may proceed to do what the Act required it should do, in case this court should be of opinion that it was the duty of the court below to have rendered obedience to the Act by directing the map or plan of the said city district to be recorded in some shape or other. Now it is certainly every day's practice to remove proceedings had in the Courts of Quarter Sessions of the several counties of the state, for the purpose, either of laying out, altering or vacating public roads and highways, by means of the writ of *certiorari*, without any application being made to the court, or any one of its judges, to grant an allowance for suing out the same upon cause shown; and where the court, upon review and examination of the proceedings in such cases, find them to be regular, it is the uniform practice of this court to affirm them, and then remit the record to the court below, there to remain, so that, if any further proceeding should be requisite, it may be had. The case of laying out roads for public use under our Acts of Assembly, resembles, in many respects, the present case; and the practice just mentioned, in regard to suing out writs of *certiorari* from this court to the Courts of Quarter Sessions, in the case of roads, has obtained long since in the state, and would seem to be alluded to, and sanctioned by the first and eleventh sections of " an Act relative to the jurisdiction and power of the courts," passed as late as the 16th of June 1836. The motion, therefore, to quash the writ of *certiorari*, in this case, is dismissed.

Now, as to the constitutional question which has been raised in the case. In the close of the 10th section of the 9th article of the constitution, it is declared that, " no person shall for the same offence, be twice put in jeopardy of life or limb, *nor shall any man's property be taken or applied to public use without consent of his representatives, and without just compensation being made.*" This latter clause recognises the right, on the part of the state, to take and appropriate private property to public use; a right, however, which she would have without any clause of the kind or provision on the subject, as it is a right inseparably connected with sovereign power, and without which it would be difficult, if not impossible, for any state to get along. It is perfectly obvious, that

the clause was not introduced into the constitution for the purpose of either conceding such a right to the state, or of showing that it existed, but merely with a view to regulate the exercise of it, so that the private property of no man should be taken for public use, without the consent of the legislature, and without a just compensation being made to him for it. That the laying out and opening of streets, lanes, alleys, and even public squares, are and may be essentially necessary for the use and benefit of the public, is a proposition so clearly demonstrated by every day's experience, that it cannot be denied with any propriety. But then the mere laying of them out cannot be said, of itself, to be a *taking* of the property of the individuals, upon which they are laid out, for public use at some future day, but rather a designation of what may be required for that purpose thereafter; so that the owners of the property may in due time be fully apprized of what is anticipated, and regulate the subsequent improvements, which they shall make thereon, accordingly. It is only when the streets, lanes, alleys, and public squares, shall come to be admitted in this case into the city, as a part thereof, and be *opened* under the authority of the same, in the manner prescribed by the Act, that the lands so appropriated can be said to be taken or regarded as taken for public use; for until then the owners thereof continue, not only to hold the same interest in them, but likewise to have the right to enjoy and use them in the same manner that they did previously. The instant, however, that the streets, lanes, alleys, and public squares, shall be opened, as directed by the Act, and thus actually given to the public for their use, the owners of the lands respectively, upon which such streets, lanes, alleys, and public squares, are located and laid out, becoming thereby devested of their authority over the lands so taken and applied to public use, will be entitled, under the provision in the constitution, and the Act of Assembly authorizing the laying out of the city district, &c. in this case, to receive a just compensation for the injury, if any, which they shall have sustained by reason thereof, to be assessed and paid out of the funds of the county, in the same manner that the amount of the damages sustained by the owners of lands, upon which public highways or roads are laid out, in pursuance of the authority given by the general road laws, is ascertained and paid. No valid objection can be made in this case to the mode prescribed for ascertaining and adjusting the amount of compensation, when any of the streets, lanes, alleys, or public squares, within the city district, shall come to be opened, if such a thing shall be claimed by any one entitled to it, that would not be equally strong in the ordinary case of a road laid out and opened under the authority of the general road laws; because the mode of ascertaining the compensation is identically the same in both cases, and in principle they are substantially the same. But I am not aware that any objection has ever been thought of, much

[District of the City of Pittsburgh.]

less made, to the mode of ascertaining the compensation in the case of roads. laid out and opened under the general road laws; and as to the sufficiency of the fund out of which the compensation is directed to be paid, in any case where the party claiming it, shall be found entitled to a pecuniary compensation, no one can doubt of it; because the county, within which the property taken for such purposes lies, is bound to pay, and ever deemed of sufficient ability to do so. But it not unfrequently happens that the party whose property is only taken in part for public use, is fully compensated for the loss of that which is taken, by its rendering the residue of more value than the whole was before. When this is the case, it is perfectly clear that he can have no claim to further compensation from any source. And it is not at all improbable that may turn out to be the case in this instance. But it has been objected in this case that it was not competent for the legislature to pass an Act in anticipation of a future increase of the population of the city, with a view to accommodate such increased population by laying off a district of the country, or lands adjacent to the city, and directing a survey and location of streets, lanes, alleys, and public squares, to be made in it, so that if the population should increase in such degree as to render it expedient to make it a part of the city at some distant day, it should be added thereto as such. It would be matter of great regret, I think, if it were the case, that the legislature could not exercise such a power. But it is clear that they are not limited by the constitution in this respect; and it is equally clear that the public might, and indeed frequently would be subjected to great inconvenience, if such a power did not exist, and could not be exercised by them in prospect of the rapidly progressive and increasing improvement and population of the state, so as to accommodate and meet the exigencies of the public at a future day. This was done under the authority of an Act of the Legislature of New York, passed in 1816, as appears from the case in the matter of opening Furman Street, in the city of Brooklyn, (17 *Wend.* 649); whereby a survey was directed to be made of Brooklyn, which was then but a village, extending the plan of it far beyond its population at that time, together with a map thereof, exhibiting the streets, roads, and alleys, to be permanently laid out. The survey and map were made in 1818, by trustees appointed for that purpose, exhibiting the street then in question, among others, as laid out, which, however, was not to be opened until the future advance of the population and business of the town should render it necessary. And accordingly no step was taken for opening it under the provisions of the Act, until 1835, when the town had increased greatly in size and population, and had become a city. But no one seems to have thought the Act, or the proceedings under it, unconstitutional. And the court even went so far in the case as to hold that the owners of buildings in Brooklyn, erected on the

site of the streets, *as designated on the map* of the village, were not entitled to a compensation for the destruction of such buildings, by the opening of the streets, although the order for opening the same was not made until *seventeen years* after the approval and adoption of the map.

It has also been made an objection to the Act of Assembly in this case, that the select and common councils of the city are required, on the petition of so small a number as thirty lot-holders, within any section of the district, to admit the same into the city, and thereupon to cause the streets, lanes and alleys therein, to be opened. This certainly cannot be sustained, either upon constitutional or other grounds, as an objection to the validity of the Act; for there is nothing in the constitution either to guide or restrain the discretion of the legislature in respect to it; and this being the case, whatever they have directed to be done on the subject must be submitted to and regarded as the law of the case.

We therefore think the court below erred in deciding the Act of Assembly, under which the proceeding in this case was commenced and carried on, to be unconstitutional; and that it was the duty of the court, instead thereof, to have determined that the map or plan of the said district should either be fully established, or otherwise be established with such alteration as they, upon a thorough investigation of the matter, should have thought it right to make, in order the most effectually to promote the public interest and convenience, and not that of private individuals, which must always be made to yield to the public benefit and convenience when requisite, or so intended by the legislature. The record of the case is therefore remanded to the court below, in order that it may proceed in the matter as required by the Act of Assembly.

Record remitted for further proceedings.