## John Funk's Admrs., Plffs. in Err., *v.* Waynesboro School District.

Proceedings, instituted by a board of school directors to assess damages for taking lands for school purposes, under the act of April 9, 1867, may be discontinued at any time before final confirmation of the proceedings, or the taking of actual possession of the land.

Staking off land prior to a view for assessment of damages is not such possession as to give title. (Beale v. Pennsylvania R. Co. 86 Pa. 510, distinguished.)

(Decided October 4, 1886.)

NOTE.—In this case the actual possession of the land had not been taken. Where it has been, there can be no discontinuance without the consent of the opposing party. Wood v. State Hospital for Insane, 164 Pa. 159, 30 Atl. 237; Fischer v. Catawissa R. Co. 175 Pa. 554, 34 Atl. 860.

Certiorari to the Common Pleas of Franklin County to review the record of the court vacating proceedings for the assessment of damages for lands taken for school purposes. Affirmed.

Reported below, 1 Pa. Co. Ct. 422.

The facts are stated in the opinion.

The assignments of error were to the action of the court: (1) in allowing the withdrawal of the original petition and the subsequent proceedings in the case; and (2) in ordering the rule for a discontinuance to be made absolute and decreeing that all the proceedings be vacated.

*F. M. Kimmel* and *John Stewart,* for plaintiffs in error.— Whenever the board of directors or controllers of any school district in this commonwealth shall be unable to procure an eligible site for the erection of school houses therein, as they may deem expedient, by agreement with the owner or owners of the land, it shall and may be lawful for the board of directors, in behalf of the district, to enter upon and occupy sufficient ground for the purposes, which they shall designate and mark off, not exceeding in any case one acre; and to use and occupy the same for the purpose of erecting thereon a school house, with its necessary or convenient appurtenances; and for all damage done and suffered, or which shall accrue to the owner or owners of such land, by reason of the taking of the same for the purposes aforesaid, the funds of the district which may be raised by taxation shall be pledged and deemed as security; and it shall and may be lawful for the court of common pleas of the proper county, on application thereto by petition, to appoint a jury of viewers who shall establish and determine the quantity and value of said land so taken, to be used for the purposes aforesaid, and who shall estimate and determine whether any, and if any what amount of, damages has been or may be sustained and to whom payable, and make report thereof to said court; and if damage be awarded and the report be confirmed by the said court, judgment shall be entered thereon. Act of April 9, 1867, 1 Purdon's Digest, p. 307, pl. 172.

No entry for experimental survey is required for the school board, nor does the act contemplate any. It makes its selection of a site, determines upon the amount of land required, designates and marks it off, and then proceeds to enter and occupy. It is as absolutely the property of the school district, under the statute, immediately upon its appropriation of it, as it would have been had it paid a price agreed upon and taken a conveyance. Payment precedes the appropriation of the land only where the price has been agreed upon; where it cannot be agreed upon, the appropriation is made, leaving the price to be determined according to law. The extent or degree of appropriation is unimportant; it cannot affect the principle whether it be simply an entry and marking off, or actual subjection of the property to the proposed improvements.

Where a railroad has been located and the land has been taken and appropriated for the public use, the right of the land owner to sue for his damages is complete, and he may recover all which may be caused by the location and the subsequent construction. Wadhams v. Lackawanna & B. R. Co. 42 Pa. 310.

The question of damages depends on the taking, that is to say appropriation, of the property to railroad purposes. Heise v. Pennsylvania R. Co. 62 Pa. 72.

The appropriation of the land by a railroad company is completed upon the location of the road; and after the assessment of the damages, though the report has not been confirmed, the right of the land owner to the damages is vested, and cannot be devested by an abandonment of the original location. Beale v. Pennsylvania R. Co. 86 Pa. 510.

"There is nothing in the letter or spirit [of the acts] which will permit the company to roam at pleasure over a person's land, changing the route as often as it is dissatisfied with the amount of damages assessed, thereby defeating the action of the court in a case pending. The recognition of such a power would be fraught with too great mischief to be sanctioned by any just rule in the administration of the law." Beale v. Pennsylvania R. Co. 86 Pa. 510; Neal v. Pittsburgh & C. R. Co. 31 Pa. 20.

And of what consequence is it that the cases cited are the cases of private corporations? How do municipal corporations

acquire any higher rights of eminent domain ? Their rights are conferred alike by statute, and neither can acquire any right of eminent domain except for public purposes. It will not do to say that in the one case the right is conferred for purely public purposes, in distinction to the other, because it may result in private advantage. The law makes no distinction of this kind, and the right can be conferred only for public purposes.

The security being given in due course of law, the grasp of the owner upon his property is loosened by the Constitution itself; and consequently the easement acquired passes freed from his power to obtain payment otherwise than upon the bond, and the proceeding by assessment of damages given by the law. Fries v. Southern Pennsylvania R. & Min. Co. 85 Pa. 75.

Dillon's statement of the law amounts to nothing more than that, under the language by which the power to open streets is usually conferred, there may be an abandonment of the proceeding. 2 Dill. Mun. Corp. ed. 1873, § 473, p. 572.

In case of a site for a school house, the conditions precedent to the appointment of viewers are: (1), An entry and appropriation of the land; and (2) a failure to agree with the owner as to the price. These must both be affirmed in the petition, and the viewers are appointed to determine the market value of the property taken, not with a view to enable the school board to decide whether the advantage from the proposed improvement will justify the expenditure, but solely to determine what the parties themselves could not decide, *viz.,* what is the fair and honest value of the property taken.

*O. C. Bowers* and *W. T. Omwake,* for defendant in error.— If the right or title, such as the district takes, vests immediately upon the inception of the proceedings, and if the district be held to take the fee, then an abandonment of the proceedings (it might be argued) would leave the fee in the school district, and yet defeat the owner of the price.

The learned judge below seemed to regard this as a material question and, after a careful examination of it, arrived at the conclusion that the fee passes. In this we think he was in error.

"Where the purposes for which the land is to be taken is as well met by construing the authority to warrant the taking of an easement only, as of the fee, the grant, if doubtful, will be construed most favorably for the citizen." Dill. Mun. Corp. 3d ed. §§ 603, 604.

The words of the act of April 9, 1867, are: "It shall and may be lawful for the board of directors, on behalf of the district, to enter upon and occupy sufficient ground for the purposes . . . and to use and occupy the same for the purpose of erecting thereon a school house," etc. If the legislature intended the fee to pass it would not have stopped at granting the simple right of "use and occupancy;" and we submit that these words are not sufficient to confer the right to take the fee.

Again; the statute gives to the owner only damages, not the price and value of the land.

In Long v. Fuller, 68 Pa. 170, it was held by the court below that the school district takes only an easement under the act of 1867. The judgment was affirmed by this court, but that question was not referred to in the opinion.

Municipal corporations may, at any time before taking possession of the property under completed proceedings or before the final confirmation, recede from or discontinue the proceedings they have instituted. This may be done, unless it is otherwise provided by legislative enactment, at any time before vested rights in others have attached. Dill. Mun. Corp. 3d ed. §§ 608 *et seq.; Re* Anthony Street, 20 Wend. 618, 32 Am. Dec. 608; Martin v. Brooklyn, 1 Hill, 545; *Re* New York, 18 Johns. 506; *Re* Military Parade Ground, 60 N. Y. 319; Pumphrey v. Baltimore, 47 Md. 145, 28 Am. Rep. 446, and many other cases.

Unless otherwise provided by statute, the proceedings may be discontinued by the municipality at any time before the title is acquired. State *ex rel.* McClellan v. Graves, 19 Md. 351, 81 Am. Dec. 639.

A long series of decisions has established that in these street cases the corporation may be permitted to discontinue proceedings at any time before . . . the report of the commissioners is finally confirmed, and there is a final award in the nature of a judgment in favor of the property owners for their compensation. *Re* Washington Park, 56 N. Y. 144.

Where the power of eminent domain is conferred upon a merely public agent, and the compensation to be made is to be ascertained by another body, as commissioners or a jury, the agent has an election whether to pursue or abandon the condemnation, after the price is fixed, unless a contrary legislative intent is clearly indicated. State *ex rel.* Mabon v. Halsted, 39 N. J. L. 640.

A city may revoke ordinances establishing new streets before they are opened, if, in the exercise of its discretion it ascertains that the opening of them would be injurious to the public interest. Municipality No. Three v. Levee Steam Cotton Press Co. 7 La. Ann. 270. See also Reg. v. Woods & Forests Comrs. 15 Q. B. 761; Jacob's Fisher's Dig. 11179.

The mere laying out streets, etc., for a city, under the act of June 16, 1836, and its supplement, or under the general road law, is not of itself a taking of the property of individuals by the right of eminent domain, recognized in the Constitution; and it is only when they are actually opened and applied to public use that the owners are entitled to receive compensation. *Re* Pittsburgh, 2 Watts & S. 320.

In Yost's Report, 17 Pa. 531, the difference between public and private corporations in matters of this kind is insisted upon, where it is said that private corporations exercise their privilege for their own advantage, the public advantage being only an incident.

The case of Beale v. Pennsylvania R. Co. 86 Pa. 509, is not in point and does not rule the case at bar: 1. That was a case of a private corporation taking land for its own private benefit; whereas, this is a case of a public agent acting in behalf of and for the good of the public alone. 2. In that case there was no effort to discontinue or withdraw the proceedings, nor even to amend them, which this court intimated might properly have been done. The only question before the court there was the sufficiency of an exception to the report of viewers, filed on behalf of the railroad company.

This exception, it should be observed, was not taken to any act or omission or irregularity on the part of the viewers, but was based upon the act of the railroad company itself, *viz.,* an

alleged change of route. This, we submit, was not the subject of exception on the company's part, and could only have been reached by a motion to amend the proceedings or to withdraw them, with a view to beginning *de novo*. The exception was declared insufficient; but the question at issue here did not and could not arise in that case.

OPINION BY MR. JUSTICE GORDON:

On the 27th of January, 1886, the school board of Waynesboro filed in the court of common pleas a petition which, as it sets forth all the facts involved in the present controversy, we give *in extenso*.

"That on the 25th day of October, A. D. 1884, your petitioners presented their petition to the court, asking for the appointment of viewers to view and assess damages for taking by your petitioners of certain lands (of John Funk of H.) for school purposes, said lands being situated in the town of Waynesboro, in said county of Franklin. That viewers were appointed in accordance with said petition who made report to the court on December 1, 1884, which report was ordered to be confirmed unless a review should be asked for on or before the first day of the next regular term. That before the first day of the regular term, to wit, on the third of December, 1884, a petition was filed by your petitioners, and reviewers appointed by the court, who made report to the court on the 23d day of February, 1885, only embracing, however, in their view and report a portion of the premises embraced in their first view. That said report was, on the 23d of February, confirmed nisi, and on July 28, 1885, exceptions to said report were (on behalf of your petitioners) filed by leave of court. That neither of said reports was ever confirmed absolutely.

"Your petitioners further represent that they have never entered upon or occupied the said lands further than to stake off the same, prior to the first view; and that they desire to formally abandon said lands for school purposes, so that the same may remain to the said John Funk of H. for his own use, occupation, and enjoyment, without hindrance or interference from your petitioners. Your petitioners, therefore, pray the court for

leave to withdraw all their proceedings aforesaid by payment by them of all costs accrued thereon."

On this petition a rule was issued to the administrators of the estate of the said John Funk, deceased, commanding them to show cause why the prayer of the said school directors should not be granted; and on the 26th of March, 1886, after hearing the parties, the court made the rule absolute, and vacated the previous proceedings. The rectitude of this action is now called in question by the plaintiffs in error, and it is argued that the court acted *ultra vires*. We are, however, not convinced that there is any such error as requires our intervention to correct. The entry of the directors was not permanent; they had no actual possession of the land, hence, did not interfere with that of the owner.

The report of the viewers had not been confirmed, so that the matter was still within the jurisdiction and power of the court; and, under circumstances such as these, we cannot see why a discontinuance might not be allowed as at common law. It is certainly so in road cases; for, until the court of quarter sessions finally confirms the report of reviewers, the proceedings may be set aside or abandoned.

As was said by this court in *Re* Pittsburgh, 2 Watts & S. 320: The mere laying out or location of streets is not a dedication of the land upon which they are laid to the use of the public, but only an indication of what may thereafter be so dedicated; and until they are actually opened the land owner is entitled to no damages.

It would follow, of course, that if they were never opened, or if the locations were abandoned, there could be no damages, neither could the owner have any standing to assert what was but a possible claim. So, we have it from Dillon on Municipal Corporations, 3d ed. § 608, that where municipal corporations have the power to take private property for public use, they may, at any time before taking possession thereof under completed proceedings or before final confirmation, recede from or discontinue the proceedings they have instituted. He adds: "Until assessment of damages has been made, the amount cannot be known; and it is reasonable that after having ascertained the ex-

penses of the project the corporation should have a discretion to go on with it or not as it sees fit." For the doctrine here quoted he cites a multitude of authorities from the courts of our sister states.

Now it will be seen, in the case in hand, that the school directors had no possession of the property in controversy, other than such as the public would have on the laying out of a road or street, so that the case cited is in point. Clearly, if the court of quarter sessions should, before the final confirmation of a road, discover that the expenses of its opening and maintenance were too much for the township to bear, it might for that reason alone refuse such confirmation; and it was quite as reasonable to allow a board of school directors the right to recede from its resolution to build a school house, as soon as it discovered that the price of the land which it proposed to improve was greater than the district could meet without oppression to its taxpayers.

But we are met with the case of Beale v. Pennsylvania R. Co. 86 Pa. 509, in which we held that after a railroad company had made a location on the land of the appellant, and damages therefor had been assessed, it was too late to interpose an exception that it had subsequently adopted a new line on the same land.

But that case is not similar to the one now trying; that was a private, this a public, corporation; the one had in view its own profit, and the other the public welfare; so that we might well allow a discretion to the latter that we would not to the former.

Besides this, no one would contend that the same rule would apply to a mere preliminary or trial survey as to a permanent location. Moreover, that the court might have taken this change of location into consideration on a motion to amend, and refer the matter back to the viewers, is admitted by the learned justice who delivered the opinion in that case. But if so, we cannot see why consideration might not also have been taken of the fact, had it been so, that the company had altogether withdrawn from the land. Whether, however, this be so or not, it is clear that the point now before us was not involved in that case; and it cannot, therefore, be used as authority to impeach the action of the court below.

The judgment is affirmed.