## Delaware Ice Company v. City of Easton.

*Equity—Injunction—City planning commission—Constitutional law—Acts of May 16, 1891, and July 22, 1913.*

The defendant city, by its city planning commission and council, pursuant to the Act of July 22, 1913, P. L. 902, amending section 12 of the Act of May 16, 1891, P. L. 75, placed upon the city map, as a part of its park plan, plaintiff's tract of land, containing about fifteen acres, and located within the city limits. No bond was tendered by the city, nor any other action taken pursuant to the right of eminent domain: *Held*, that the action of the defendant municipally constituted an encumbrance upon the plaintiff's land and a cloud upon its title; that the Act of 1913 is unconstitutional; that the defendant's action thereunder was an invasion of the plaintiff's rights under article xvi, section 8, of the Constitution of Pennsylvania, and the 14th Amendment of the Federal Constitution; and that the defendant be perpetually enjoined from interfering with the plaintiff's premises or the construction of buildings or other improvements.

Application for injunction. Final hearing. C. P. Northampton Co., Nov. T., 1922, No. 6, in Equity.

*H. J. Steele*, for plaintiff; *N. R. Turner*, City Solicitor, for defendant.

STOTZ, J., Jan. 15, 1923.—Following the award of a preliminary injunction, the parties to the case, by a stipulation filed of record, agreed that the court should hear and determine the same as upon final hearing, and enter a final decree in the premises, subject to the right of exceptions and appeal. No requests for findings of fact or law have been filed by either party. The facts in the case are not seriously in dispute, and are found by the court as follows:

1. The plaintiff is a corporation duly incorporated in the year 1888 under the provisions of the Act of April 29, 1874, P. L. 73, and its supplements.

2. The defendant is a duly incorporated city of the third class, located in the County of Northampton, Pennsylvania.

3. About the time of its incorporation, the plaintiff acquired title in fee simple to a tract of land containing about fifteen acres, located within the limits of the said city, between the North Delaware River Road and the Delaware River, which was then used in part in the prosecution of its business of harvesting and selling ice. Later, it was also used in connection with the business of sawing and selling lumber.

4. In May, 1912, plaintiff caused the said tract of land to be plotted and laid out into streets and lots, and a small portion of said tract has been sold and conveyed with reference to said plot.

5. Plaintiff, several years ago, remodeled and changed certain buildings upon said premises into bath-houses, canoe lockers and club-room, and on April 15, 1921, it leased for a term of five years a portion of said premises to certain tenants.

6. The said lessees, under the terms of said lease, used said leased premises as a high-class social and pleasure resort, known as "Eddyside Club," and from the bath-houses, canoe lockers and club-room they received profitable returns.

7. On July 17, 1922, the said Eddyside Club House was destroyed by fire, and on Aug. 18, 1922, an agreement was entered into between the said plaintiff and said lessees for the reconstruction of said club-house according to new plans prepared for the same, and a contract was awarded to rebuild the same, and the work of reconstruction was in progress at the time of the action of the defendant hereinafter mentioned.

8. On Sept. 21, 1922, the following notice was served by defendant upon the president of the plaintiff company:

Delaware Ice Company *v.* City of Easton.

"RESOLUTION.

"*Resolved,* by the City Planning Commission, that the Engineer of the City Planning Commission be directed to place the Eddyside property upon our map and designating it as a Public Park, and that this action be reported to City Council, being accompanied by a map of the proposed park showing the relations to adjoining properties, with the recommendation to be adopted by the Council of the City of Easton, Pa., and placed on the City Map.

"Adopted July 21, 1922. J. H. WARNER,
Secretary.

"CITY OF EASTON, PENNSYLVANIA.
"Office of City Clerk, Municipal Building.
"Easton, Pa., Sept. 20, 1922.

"The Delaware Ice Company,
Front and Bushkill Streets, Easton, Pa.

"Gentlemen: At a meeting of City Council held Tuesday, Sept. 19, 1922, the following resolutions were unanimously adopted:

"RESOLUTION.

"*Resolved,* by the Council of the City of Easton, Pa., that in accordance with section 12, Act of May 16, 1891, P. L. 75, as amended by section 1, Act of July 22, 1913, P. L. 902, the tract of ground as shown on map No. 2664-2, dated Sept. 16, 1922, together with description of said tract as prepared by A. D. Chidsey, Jr., the Engineer of the City Planning Commission, be and is hereby adopted by the City of Easton in accordance with the recommendation of City Planning Commission as a part of the Park Plan of said City and placed upon the City Map as a part of such Park Plan. The said tract is a portion of that now or formerly owned by the Delaware Ice Company.

"RESOLUTION.

"*Resolved,* by the Council of the City of Easton, Pa., that in accordance with section 12, Act of May 16, 1891, P. L. 75, as amended by section 1, Act of July 22, 1913, P. L. 902, the tract of ground as shown on map No. 2664-1, dated Sept. 16, 1922, together with description of said tract as prepared by A. D. Chidsey, Jr., the Engineer of the City Planning Commission, be and is hereby adopted by the City of Easton in accordance with the recommendation of City Planning Commission as a part of the Park Plan of said City and placed upon the City Map as a part of such Park Plan. The said tract is a portion of that now or formerly owned by the Delaware Ice Company.

Very truly yours, J. H. WARNER,
[Seal] City Clerk.

"P. S.—The above property referred to consists of the tract of land along the Delaware from the F. P. Smith Ice House north to the City Line. Map and description may be seen in the office of the engineer."

9. The resolutions above recited make no reference to any appropriation or condemnation of the said property of the plaintiff company, or that the same was enacted in pursuance of any right of eminent domain, nor was any notice of such proposed action given the plaintiff company or any opportunity for a hearing given it.

10. The defendant has not tendered plaintiff any bond nor asked the court to approve any bond to secure the damages that would be suffered by the plaintiff by reason of the appropriation of said premises, nor has it made any appropriation of funds for the purpose of paying for the same.

4 D. & C.

Delaware Ice Company *v.* City of Easton.

11. The said tract of land so placed upon the city map cannot be used to advantage except for building purposes, and if it can be used for such purpose only at the risk of having such buildings destroyed whenever the defendant should think proper to condemn and enter upon the same, the plaintiff will be deprived of the ability to obtain any income from, or to make sale of, said lots or premises except at great loss, and the public and owners would be deprived of contemplated valuable improvements upon the same.

12. There is now resting upon said premises a mortgage to secure the sum of $15,000, and the annual taxes due by it approximate $700, and plaintiff's only income is derived from rentals received from said premises and buildings destroyed by fire, which plaintiff contracted to rebuild, as above mentioned.

## Conclusions of law.

1. The defendant's action with respect to the said premises, as set forth in the findings of fact, results in an encumbrance attached to the land of the plaintiff, constituting a cloud upon its title.

2. The said action of the defendant violates the constitutional guarantees against the appropriation of private property for public use, except upon just compensation, as well as that against depriving the owner of its enjoyment and possession without due process of law.

3. The said resolutions of defendant's council are null and void as against any building contract for the erection of buildings upon said premises, made prior to the passage of said resolutions.

4. The said resolutions are null and void, so far as relates to the right of the plaintiff company, its lessees or vendees, to erect buildings upon said premises and receive just compensation therefor in the event of any future appropriation by defendant of the same.

5. That the preliminary injunction heretofore granted, restraining the corporation defendant, its officers, agents and employees, from interfering with said premises or the construction or erection of any buildings upon the same be made permanent.

## Discussion.

The precise question presented in this case is whether or not the Act of July 22, 1913, P. L. 902, which extends section 12 of the Act of May 16, 1891, P. L. 75, so as to include, in addition to streets and alleys, also parks and playgrounds in its scope, is in violation of the constitutional rights of the plaintiff.

The 12th section of the Act of 1891 is that "Every municipality shall have a general plan of its streets and alleys, including those which have been or may be laid out but not opened; which plan shall be filed in the office of the engineer or other proper officer of the municipality, and all sub-divisions of property thereafter made shall conform thereto. No streets or alleys, or parts thereof, laid out and confirmed shall afterwards be altered without the consent of councils, and no map or plot of streets or alleys shall be entered or recorded in any public office of the county in which said municipality is situated until approved by councils. No person shall hereafter be entitled to recover any damages for any buildings or improvements of any kind which shall or may be placed or constructed upon or within the lines of any located street or alley after the same shall have been located or ordained by councils."

The only change in the law wrought by the amendatory Act of 1913 is to add after the words "streets and alleys," as contained in section 12 of the Act of 1891, the words "parks and /or playgrounds." This addition, however, if valid, extends the power of a municipality in a direction and to a purpose

and degree not contemplated by previous legislation or recognized theretofore under the law.

Article XVI, section 8, of the Constitution of Pennsylvania provides that "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways and improvements, which compensation shall be paid or secured before such taking, injury or destruction."

By the 14th Amendment to the Federal Constitution, states are prohibited from depriving "any person of life, liberty or property without due process of law." The inhibition of this amendment has been held to restrain the legislative power of the states, and the flat doctrine has been laid down that all the departments of state government are restrained by it. In Ex parte Virginia, 100 U. S. 339, it was held that: "A state acts by its legislature and its executive or judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the state . . . shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life or liberty without due process of law, or denies or takes away the equal protection of the law, violates the constitutional inhibition."

Section 12 of the Act of 1891 is constitutional. It was so held in Bush v. McKeesport, 166 Pa. 57; Harrison's Estate, 250 Pa. 129, and other cases that might be cited. No change in the law was thereby effected, but, as was held in Bush v. McKeesport, 166 Pa. 57, it is "merely declaratory of the common law of the state as recognized in Forbes Street, 70 Pa. 125, and other cases." The rule that no damages for buildings or other improvements placed or made within the lines of any located street after the same shall have been located and put upon the city map shall be recoverable was first laid down in District of the City of Pittsburgh, 2 W. & S. 320, and has been uniformly followed and applied in all subsequent decisions of our appellate courts on the subject. If, therefore, "parks and playgrounds" have the same status in the scheme and scope of municipal development, growth and extension contemplated when the Act of 1891 was passed, and when the rule above stated was enunciated by the Supreme Court in District of the City of Pittsburgh, 2 W. & S. 320, and subsequent cases, as "streets and alleys," it would necessarily follow that the Act of 1913, which seeks to extend the rule to parks and playgrounds, is likewise constitutional.

While the rule that the owner of land through which a municipality may locate a street shall not be entitled to damages for improvements placed on the bed of such streets and within the period between such location and the actual taking thereof has been repeatedly stated and uniformly followed in Pennsylvania, both before and since the passage of the Act of 1891, a careful scrutiny of some of the opinions handed down in these cases by the Supreme Court will disclose that it was deemed justified more by necessity and by the presumed benefits which it brought to the land owner affected than by any other consideration; and while its validity from the standpoint of constitutional rights has been steadily maintained in this State as against the owner, nevertheless the question has been recognized as a subject of legitimate debate. Thus, in Bush v. McKeesport it was said: "If the question intended to be raised by appellants were an open one, much might be said on both sides, but we think the underlying principle has been too long and firmly settled in this State adversely to plaintiffs' contention to justify us in holding

4 D. & C.

that any new principle was introduced or change in the law effected by the clause quoted. That clause is merely declaratory of the common law of the State as recognized in Forbes Street, 70 Pa. 125, and other cases."

In Harrison's Estate, Mr. Justice Elkin, delivering the opinion of the court, says, on page 132: "For the purposes of the present case, we do not deem it necessary to discuss at length the constitutionality of the Act of May 16, 1891, P. L. 75, which applies generally to the municipalities of the Commonwealth. This act, as well as others of like import, has been under consideration in many cases, with the result that its validity has always been maintained. It may be, as learned counsel for appellant so ably contend, that the profession have assumed the constitutionality of the Acts of 1871 and 1891 to be a settled question without giving due consideration to our Bill of Rights and to the 14th Amendment of the Federal Constitution. But whatever the reason, the fact cannot be gainsaid that counsel and courts have accepted our decisions as finally settling this question. It would be a shock to the profession if it should now be determined for the first time that these acts were unconstitutional and void. Damages have been assessed upon the basis of their validity for a long period of years, and municipalities throughout the Commonwealth have plotted their streets and authorized their improvement upon the faith of this legislation. For the courts now to strike down these acts upon constitutional grounds would be an extreme exercise of judicial power · which nothing but plain and palpable violation of the organic law could justify. In our opinion, the provisions of these statutes are not so plainly and palpably in violation of the Constitution as to require that they be stricken down after repeated decisions of this court upholding them."

These cases would seem to indicate that it was necessity for the public use— and benefit and advantage to the owner himself which originally prompted the promulgation of the rule, and which, together with the doctrine of *stare decisis*, has since been constantly thrown into the scale to maintain it. But for this factor there is room for at least a difference of opinion whether the rule would have been adopted and retained in Pennsylvania. It is by no means in harmony with the law in other jurisdictions, and no cases evidencing the existence of a similar rule in any other state have been brought to the writer's attention. In District of the City of Pittsburgh, 2 W. & S. 320, the New York case of Furman Street, 17 Wend. 649, was cited in support of the position there taken, and in Forbes Street, 70 Pa. 125, the court referred to that case as "good authority upon this point;" but it is of interest to note that the Court of Appeals, in the case of Forster v. Scott, 136 N. Y. 577, 18 L. R. A. 487, subsequently overruled the Furman Street case, and in the course of the opinion said: "The validity of a law is to be determined by its purpose and its reasonable and practical effect and operation, though enacted under the guise of some general power which the legislature may lawfully exercise, but which may be, and frequently is, used in such a manner as to encroach, by design or otherwise, upon the positive restraints of the Constitution. What the legislature cannot do directly, it cannot do indirectly, as the Constitution guards as effectually against insidious approaches as an open and direct attack. Whenever a law deprives the owner of the beneficial use and free enjoyment of his property, or imposes restraints upon such use and enjoyment that materially affect its value, without legal process or compensation, it deprives him of his property within the meaning of the Constitution. All that is beneficial in property arises from its use and the fruits of that use, and whatever deprives a person of them deprives him of all that is desirable or valuable in the title and possession. It is not necessary, in order

to render a statute obnoxious to the restraints of the Constitution, that it must in terms or in effect authorize an actual physical taking of the property or the thing itself, so long as it affects its free use and enjoyment or the power of disposition at the will of the owner. Though the police and other powers of government may sometimes incidentally affect property rights according to established usages and recognized principles familiar to courts, yet even these powers are not without limitations, as they can be exercised only to promote the public good and are always subject to judicial scrutiny," citing, besides a number of other cases, Munn v. Illinois, 94 U. S. 113, 141; Henderson v. Mayor, 92 U. S. 259; Brimmer v. Rebman, 138 U. S. 78; Chicago & St. Paul R. R. Co. v. Minnesota, 134 U. S. 418; Cooley, Const. Lim. (5th ed.), 207, 670.

In 3 Dillon on Municipal Corporations (5th ed.), § 1029, the author says: "The mere fact that a street or other improvement is plotted and laid out upon a map, prepared pursuant to statutory authority, does not in itself constitute a taking of the property included within the lines of the projected street. But if the statute, pursuant to which the map is made and filed, declares that no compensation shall be made to the owner of land taken for the street, etc., in respect of any building erected thereon, after the making and filing of the map, the owner of the land is deprived of the beneficial use and enjoyment of his property, and a restraint is imposed thereon which materially affects its value. Hence, such a provision deprives the owner of his property, something which can only be done upon the payment of just compensation; such a statutory provision is unconstitutional, as depriving the owner of his property without due process of law and without compensation."

As before noted, the reason for the rule with respect to streets, lanes and alleys, which prompted its adoption and retention by our own courts, has been its necessity and the benefit to the public, and even to the land owner himself, which flows from its application. This is repeatedly stressed in the cases hereinbefore cited. Thus, in District of the City of Pittsburgh it was said: "That the laying out and opening of streets, lanes, alleys, and even public squares, are and may be essentially necessary for the use and benefit of the public, is a proposition so clearly demonstrated by every day's experience that it cannot be denied with any propriety. . . . But it not unfrequently happens that the party whose property is only taken in part for public use is fully compensated for the loss of that which is taken by its rendering the residue of more value than the whole was before. . . . It would be matter of great regret, I think, if it were the case, that the legislature could not exercise such a power. But it is clear that they are not limited by the Constitution in this respect; and it is equally clear that the public might, and indeed frequently would, be subjected to great inconvenience if such a power did not exist and could not be exercised by them in prospect of the rapidly progressive and increasing improvement and population of the State, so as to accommodate and meet the exigencies of the public at a future day."

In Philadelphia Parkway, 250 Pa. 257, 261, Mr. Justice Elkin says: "The doctrine is founded upon equitable considerations and a wise public policy. It is in aid of the development, growth and expansion of municipalities. As applied to unimproved land in urban districts, it is beneficial to the owners of real estate, and in most instances greatly appreciates the value of the land remaining after the street is opened. When the streets are plotted, land owners, prospective purchasers, municipal authorities and all interested persons have a definite chart to guide their future actions. Lots can be laid out

4 D. & C.

and made available for sale; buildings can be erected so as to conform to the lines of projected streets; and in this way the expansion of the city and growth of its population can be facilitated. These considerations were given due weight when the rule as to plotted but not opened streets was originally adopted. As applied to the plotting of streets through unimproved land, or as to projected streets in sparsely settled urban communities, the principle is sound and there is no disposition on the part of this court to make a departure from the settled rule of our cases."

Other cases could be cited wherein the reason for the principle is elaborated, and all through the cases, particularly the earlier ones, this received more attention than the constitutional question involved. As was said by Mr. Justice Elkin in Harrison's Estate: "It may be, as learned counsel for appellant so ably contends, that the profession have assumed the constitutionality of the Acts of 1871 and 1891 to be a settled question without giving due consideration to our Bill of Rights and to the 14th Amendment of the Federal Constitution."

Taking it, however, as we must, that the question has been definitely and finally settled in Pennsylvania with respect to streets and alleys, and that section 12 of the Act of 1891 is constitutional, it does not necessarily follow that the Act of 1913, extending the rule to parks and playgrounds, is equally valid. The element of necessity for the growth and expansion of the city, contemplated in the cases referred to, is not here present, and it cannot be said that the owner of the tract upon which the city has thus tentatively laid its hand will derive any possible benefit if the city should ultimately take it over. The right which the Act of 1913 undertakes to give to municipalities is an extension of power far beyond anything contemplated when the rule with respect to streets was laid down or when the Act of 1891 was passed. Potentially, it is unlimited in its scope. If the city can thus place its mark on fifteen acres, it could with equal right place on its map a tract ten times that size, whatever its condition or location might be. Should an over-enthusiastic planning commission, supported by an equally optimistic council, set apart an entire section of the city by the mere expedient of designating it upon the map as a public park, to be taken over at some indefinite future date when the city's finances might warrant it, and a succeeding city government might sanction it, the result to property owners within its boundaries would be easily conceivable. Consider the situation of the tract in suit. Here is a piece of land, fifteen acres in area, which has already been laid out in streets and building lots. It is encumbered by a mortgage of $15,000. The annual taxes amount to more than $700. The only present return from it consists of the rental from several small houses and a club-house in process of reconstruction. It is the purpose of the plaintiff owner to sell the lots for building purposes and thereby realize on its investment. If the city had merely projected streets through the tract, or perhaps other streets than those already plotted, the plaintiff could still sell its lots. Now it cannot sell a single lot, for manifestly no purchaser would buy except to build upon it, and this would entail the risk of loss of the value of the building whenever the city would be ready to appropriate the land. By the city's action the whole proposition of this tract has become frozen in the hands of its owner, and if the Act of 1913 is held valid, the plaintiff is wholly without remedy, legal or otherwise. Even the security of the mortgage may be endangered, for who would buy at sheriff's sale upon a foreclosure when the only prospect of realizing upon the purchase would be the uncertain future chance that the city might take it off his hands at a price to be fixed by viewers? If the Act of 1913 is constitu-

tional, a planning commission and council can, by merely placing it upon the map as a future park, arrest and paralyze for an indefinite period the growth of a whole section of the city. While we may assume that the city authorities in this case acted in entire good faith, and that it is the present purpose to convert it ultimately into a public park, yet this neither affects the principle involved nor affords any relief to the owner. The proposition before us is vastly different from that of guiding the orderly and advantageous extension of a community by mapping out its future thoroughfares so as to harmonize with those already in existence, thereby stimulating its growth and resulting in benefit to the public at large and to owners of the land over which the streets are projected. While parks and playgrounds are highly desirable, it is doubtful whether they have yet attained that degree of necessity which would give a contemplated park, existing merely upon paper, the same sanction, when in conflict with the claim of constitutional protection interposed by the owner of the site, which the law has conferred upon located but unopened streets. A street is a sharply defined and limited strip laid across the owner's land, and, when opened, operates to make the remainder of the tract convenient and available for building and kindred purposes as the municipality creeps forward in its growth, and without which all progress would be halted; but here the mapping of the entire tract, including the streets already located, as a future park has exactly the opposite effect.

The very reverse of the reason for the rule laid down in 2 W. & S. 320, and the other cases heretofore cited, is here present, and, therefore, the rule itself, as against the constitutional rights of the owner, has nothing to sustain it. As was said in the New York case of Forster *v.* Scott: "The validity of a law is to be determined by its purpose and its reasonable and practical effect and operation." What the courts of Pennsylvania have said in support of the doctrine as applied to streets has no force when it is sought to extend the same principle to entire tracts, and no decided cases have been brought to our attention which hold otherwise. That the city may take land for parks and playgrounds is unquestioned (Act of June 26, 1895, P. L. 349), but it is clearly apparent that, since the owner of the land cannot obtain compensation for the land thus ordained until it is actually taken (see Grugan *v.* Philadelphia, 158 Pa. 337; South Twelfth Street, 217 Pa. 362), and he can improve it only at the risk of losing the value of his improvements if and when the city should convert its tentative taking into an actual appropriation, and in the indefinite meanwhile the tract must lie undeveloped and unproductive to the damage of the owner, for which he can have no recourse, the operation of the Act of 1913 would be such a palpable invasion of his rights under article XVI, section 8, of the Constitution as would compel the conclusion that the act cannot be upheld.

That the resolutions of council, as hereinbefore recited, do not amount to an appropriation of the land is evident. It is admitted that no bond was tendered by the city or submitted to the Court of Common Pleas for its approval, and no compensation was agreed upon. See Act of June 8, 1895, P. L. 188; Roudebush *v.* Meadville, 241 Pa. 261; Speer *v.* Railroad Co., 255 Pa. 211.

The bill contains the prayer, *inter alia*, that the "said resolutions be declared a lien or encumbrance upon said premises, a cloud upon the title, and, under the circumstances, null and void." That the formal action of the city thus taken by its council constitutes, by virtue of the Act of 1913, a cloud upon plaintiff's title is apparent. Cloud on title is "something that shows *prima facie* some right of a third party, either to the whole or some interest in the title. Anything is a cloud which is calculated to cast doubt or suspicion upon

the title, or seriously to embarrass the owner, either in maintaining his rights or in disposing of the property:" 7 Cyc., 256, citing Cooley on Taxation, 542; 11 Corpus Juris, 920. In Evans *v.* Taylor, 177 Pa. 286, it was held that a street located through land on the city map, but unopened, was such an encumbrance as would preclude recovery in an action of *assumpsit* for purchase money where the contract of sale was executory, and contained a clause that the property was to be "clear of all encumbrances." Mr. Justice Green, quoting from Bank *v.* Alexander, 3 Cent. Repr. 388, says at page 290: "It has been stated in the findings of fact that this street has been laid out thirty feet wide over a portion of the lot. This fact presents a most serious obstacle to the granting of a decree for specific performance of the contract between the parties. It is true the street is not opened, but is laid out on the city plan. The effect of this is to give notice to whomsoever takes the lot of the possibility, or rather the probability, that the street will be opened at any time, and, therefore, he cannot claim damages from the city should he erect improvements upon it. See Act of April 3, 1851, P. L. 327. He finds himself in the awkward position of not being able to claim damages, as there has been as yet no physical taking, and yet he cannot improve except at his peril. At the best, he is subject to uncertainties, and is liable to a lawsuit to test the question of benefits or damages to which he may be entitled or for which he may be liable. This would seem to present a very similar state of facts to that governed by the decision of the Supreme Court in Speakman *v.* Forepaugh, 44 Pa. 374." See, also, Batley *v.* Foerderer, 162 Pa. 460.

If, therefore, action by a municipality in accordance with rights and powers given it by section 12 of the Act of 1891, with relation to streets, imposes an *encumbrance upon the land over which an unopened street is located*, it follows that the effect of similar action under an act which would extend those rights and powers to the acquisition of future parks and playgrounds would likewise impose an encumbrance.

That equity has jurisdiction to restrain the filing or enforcing of an invalid lien or encumbrance is settled: Harper's Appeal, 109 Pa. 9; Leake *v.* Philadelphia, 171 Pa. 125; Gregg *v.* Sanford, 65 Fed. Repr. 151. In Dull's Appeal, 113 Pa. 510, it was held, quoting from the syllabus: "The jurisdiction of the court of equity to remove clouds from title is an independent source or head of jurisdiction, not requiring any accompaniment of fraud, accident, mistake, trust or account or any other basis of equitable intervention." See, also, Slegel *v.* Lauer, 148 Pa. 236, where the court held that an owner of property has a right, not merely to possession, but to a clear title, and when his right to the title is incapable of being enforced in any legal action he can institute, as is the case here, he is entitled to the protection of a court of equity.

### Decree.

And now, Jan. 15, 1923, this cause came on to be heard at this term, and, upon consideration thereof, it is ordered, adjudged and decreed that this action of the defendant municipality, as evidenced by the resolution of its city planning commission and its city council, hereinbefore fully recited, constitutes an encumbrance upon plaintiff's land and a cloud upon its title; that the said action is violative of the plaintiff's protection under the Constitution of the State of Pennsylvania and the 14th Amendment of the Federal Constitution, and, therefore, null and void as against the right of the plaintiff, its lessees or vendees, to improve the said premises, or any part thereof, by the erection of buildings thereon or otherwise, and to receive just compensation for such improvements made subsequent to the said action of the defendant city, in

the event of a future appropriation by the defendant of the land in question; and that the injunction heretofore granted be made permanent, and that a perpetual injunction be issued to the City of Easton, the defendant, its officers, agents and employees, from interfering with the said premises of the plaintiff, or the construction or erection of any buildings or other improvements upon the same. It is further ordered and decreed that the defendant shall pay the costs of this proceeding. The prothonotary will enter this decree "*nisi*" and give notice of the same to the parties or their respective counsel, and if no exceptions are filed within ten days, this decree shall be entered by him as a final decree. From Henry D. Maxwell, Easton, Pa.